UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Victor Donnell Fields,                              Civil No. 09-1288 (JNE/FLN)

    Plaintiff,

v.                                                  **ORDER** & **REPORT AND RECOMMENDATION**

Thomas Walsch, *et al.*,

    Defendants.

_____

Victor Donnell Fields, *pro se*, for Plaintiff.
Anne K. Lindberg, C. John Jossart, James J. Kretsch, Jr. for Defendant Bill Deike.
Angela Behrens for Minnesota Department of Corrections Defendants.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendant Bill Deike's Motion to Dismiss or Alternatively, For Summary Judgment [#30], the Motion for Summary Judgment by Defendants Joan Fabian, Kao Her, Ronald Julin, John King, Michael Parks, Mary Perez, and Thomas Walsch [#40], and the Plaintiff's Motion to Amend Complaint [#46]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that the defendants' motions be granted. Additionally, Plaintiff's motion to amend is denied.

    **I.    BACKGROUND**

Plaintiff Victor Donnell Fields is an inmate in custody of the Minnesota Department of Corrections ("DOC"). (Rudeen Aff. ¶ 1.) Plaintiff is serving a life sentence for the crimes of

1

first-degree murder and attempted first-degree murder. *State v. Fields*, 679 N.W.2d 341, 344 (Minn. 2004). From December 2002 until November 2009, Plaintiff was incarcerated at the Minnesota Correctional Facility in Stillwater, Minnesota ("MCF-STW"). (Rudeen Aff. ¶ 2.) He is currently incarcerated at the DOC's Oak Park Heights facility in Minnesota. *Id.*

In his complaint for violation of civil rights under 42 U.S.C. § 1983, Plaintiff alleges that: 1) he did not receive adequate meals while he was in segregation at MCF-STW in April and May of 2009; and 2) that prison staff tampered with letters Plaintiff sent because the letters complained about DOC personnel and non-feeding. (Compl. ¶¶ 1-10.) As Plaintiff is allergic to eggs, prison officials have determined that he should be given an egg substitute (generally peanut butter) in lieu of eggs. However, Plaintiff states that on at least six occasions he was not given meals appropriately tailored to his egg allergy, explaining that he either did not receive the correct peanut butter supplement, did not receive the correct items in addition to the peanut butter, and/or received meals contaminated with eggs or egg shells. *Id.* Plaintiff states that he "informally grieved" to multiple staff members about these problems, but that he did not receive responses in many instances. *Id.*

The Defendants in this case include DOC employees Joan Fabian, John King, Mary Perez, Kao Her, Ronald Julin, Michael Parks, and Thomas Walsh. (*See* Compl.) Defendant Bill Deike is an employee of CWF Solutions, LLC, a private company that contracts with MCF-STW to provide food services. (*Id.*; Rudeen Aff. ¶ 5; Pouncy Aff. ¶¶ 2-3.) Plaintiff also names as a defendant Vaughn Herbert, a former DOC employee. (*See* Compl.) The Court previously dismissed former DOC employee Dennis Benson from this action. (Doc. No. 36.)

Minnesota DOC Policy 303.100 sets forth the DOC's formal grievance procedure for

inmates to use if they are concerned about issues relating to their conditions of confinement that are "personal to an offender." (Ebeling Aff. ¶ 2, Ex. 1.) Prior to initiating a formal grievance, inmates are generally required to send kites (informal communications) to prison staff involved in the relevant issue. *Id.* Under prison policy, offenders must follow the chain of command and contact only one staff member at a time. *Id.* If an inmate's informal communications do not resolve the problem, the inmate may initiate a formal grievance. *Id.*

The formal grievance procedure has two levels. First, an official grievance form (with required attachments) must be filed with the correctional facility's grievance coordinator.[1] The facility warden (or the warden's designee) will decide the grievance. *Id.* Under its "Procedures" section, Policy 303.100 states in part:

> A. <u>Grievance</u>:
> 1. *Initiating a Formal Grievance*: If the offender does not believe his/her issue has been resolved informally through kites with staff, he/she may submit a formal grievance (attached) to the facility grievance coordinator, provided that he/she has more than 40 working days left until release. An offender who intends to file a grievance must obtain and file his/her grievance form within 30 calendar days of occurrence of the issue being grieved.
>    a) The offender must:
>       1) Complete an Offender Grievance form and state clearly and legibly the grievance identifying a single complaint and the resolution he/she is seeking.
>       2) Attach all kite(s) used in the chain of command to which staff have responded that shows an attempt at informal resolution.
>       3) Not exceed the limit of using the form and one additional 81/2 X 11 inch page to state the complaint. Supporting exhibits with the complaint

---

[1] If an inmate fears retaliation by the facility in which he is incarcerated, he may complete the first step of the grievance process by filing a grievance directly with DOC's Central Office instead of the facility grievance coordinator. (Ebeling Aff. ¶ 2; see also Ex. 1 at Procedures subd.(A)(3).)

are not limited.

(Ebeling Aff. Ex. 1 at Procedures subd. (A).) Second, if the inmate is unsatisfied with the decision of the facility warden, he may initiate a grievance appeal. Appeals are decided by the Commissioner of Corrections, the Assistant Commissioner, or the Deputy Commissioner. *Id.* The appeal section of the Policy 303.100, listed under "Procedures," states in part:

> B. <u>Appeal</u>:
> 1. *Initiating a Grievance Appeal.* If the offender is not satisfied with the warden's or designee's response, the offender may submit an appeal (attached) to the Central Office grievance appeal coordinator within 15 working days of the date the warden or designee signed the response.
>    a) The offender must submit the appeal form and one copy of the facility grievance and response. The appeal must not exceed the form and one additional 8 ½ X 11 inch page to state the complaint.
>    b) Supporting exhibits will be returned to the offender.

(Ebeling Aff. Ex. 1 at Procedures subd. (B).)

Plaintiff does not dispute the DOC's contention that the issues raised in Plaintiff's complaint regarding adequate meals and alleged mail tampering are subject to the DOC's grievance procedure. (*See* Ebeling Aff. ¶ 4.)

### A. Plaintiff's Informal Communications Regarding Inadequate Meals and Mail Tampering

The record shows that Plaintiff made written complaints relating to his allegations of inadequate food. Plaintiff sent a kite dated May 3, 2009 to Defendant Parks, stating that he had been improperly given toast and hashbrowns exposed to eggs and had been denied his peanut butter substitute. (Compl. Ex. A, Doc. No. 1-2.) In a response dated May 8, 2009, Parks apologized for the inconvenience to Plaintiff, stating that the issue had been discussed with prison staff and that Plaintiff should be given peanut butter instead of eggs going forward. *Id.*

4

In a letter also dated May 3, 2009, Plaintiff wrote to Defendant DOC Commissioner Joan Fabian. (Doc. No. 50 at 4.) The letter covered a variety of topics, including a report of the incident on May 3, 2009 during which Plaintiff did not receive the correct meal. *Id.* In a responsive memorandum from Defendant Warden John King on behalf of Defendant Fabian dated May 26, 2009, King wrote:

> With regard to your current situation in segregation, Lt. Parks has met with you on a number of occasions. He too has addressed your concerns with meals to the officers in the unit as well as CWF staff in the kitchen. In fact the kitchen has supplied you with a 21 day supply of peanut butter to supplement the protein in the eggs you can not eat. It is also a fact that the unit is supplying you with bread for your peanut butter. With each request the staff have responded to your needs to ensure that you are getting the items in your meals that you should be. There may have been an instance that you went short on a meal, however staff did get you the appropriate supplement and they have also been advised to do so in a timely manner.

(Behrens Aff. Ex. 1, Doc. 58-1.)

With respect to his complaints about mail tampering, Plaintiff sent two kites – respectively dated May 17, 2009 and May 26, 2009 – to Defendant Perez, the prison mail room supervisor. (Doc. No. 51 at 8-12.) Plaintiff stated that he had sent letters to his mother and a friend containing descriptions of alleged inadequate meals, and alleged that the letters had been tampered with in retaliation for these disclosures. *Id.* A response dated May 26, 2009 indicated that the mail room had checked its records and found that all mail was sent to Plaintiff's intended recipients. (Doc. No. 51 at 8.)

### B. Plaintiff's Attempt to Use the Formal Grievance Process

Plaintiff attempted to use the first step of the formal grievance process by filing a formal "Offender Grievance" form dated June 3, 2009. (Rudeen Aff. Ex. 1.) This grievance was filed

with respect to Plaintiff's claims regarding inadequate meals; mail issues were not addressed. [2] *Id.* Via a responsive memorandum dated June 8, 2009, DOC Grievance Coordinator Margaret Thron returned Plaintiff's grievance. Thron stated that Plaintiff's grievance was returned because he failed to attach copies of all kite responses from prison staff regarding inadequate meals. *Id.* DOC Policy 303.100 states that all kites to which staff have responded must be attached to a formal grievance form showing that the offender attempted informal resolution. (Ebeling Aff. Ex. 1 at Procedures subd. (A)(1)(a)(2).) The policy further states that the facility grievance coordinator will return formal grievances that do not indicate the offender attempted to informally resolve the issue via the kite system. (Ebeling Aff. Ex. 1 at Policy subd. (A); Procedures subd. (A)(2)(a)).) Plaintiff used a kite dated June 9, 2009 to respond to Thron's memo, stating that it was a waste of time to send his grievance back because Plaintiff had already stated that he informally contacted prison officials but received no responses. (Rudeen Aff. Ex. 1.) Thron responded to the kite on June 10, 2009, stating that the "Grievance Policy is very specific in that kites must be attached showing that you attempted to resolve your issue." *Id.*

The record contains no evidence that Plaintiff resubmitted the formal grievance form with attached kites, that Plaintiff filed a formal grievance directly with DOC's Central Office, or that Plaintiff attempted to appeal Thron's decision.

## II. STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 56, summary judgment is appropriate when

---

[2] As DOC Policy 303.100 states that each formal grievance may only address one issue, Plaintiff correctly addressed only the issue of inadequate meals in his single formal grievance attempt. (Ebeling Aff. Ex. 1.) However, the record contains no evidence that Plaintiff filed or

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to determine whether a certain fact is material, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When the moving party brings forth a proper summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Anderson*, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a

---

attempted to file a formal grievance concerning his allegations of mail tampering.

proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c).")

### III. DISCUSSION

#### A. The PLRA Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust available administrative remedies before commencing a court action challenging conditions of confinement. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement, which was once within the discretion of the district court, has been mandatory since 1996. *Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'") (quoting *Booth v. Churner*, 532 U.S. 731, 739 (2001)). Designed by Congress to "reduce the quantity and improve the quality of prisoner suits," mandatory exhaustion affords "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 525 ("In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation."). Internal administrative process may also filter out frivolous claims, clarify the contours of a controversy, preserve witness testimony and evidence while still fresh, and give prisons a fair opportunity to correct their own errors. *Id.*; *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007). In addition, the PLRA exhaustion requirement provides a

8

strong incentive for prisoners to use the prison grievance procedure before filing a federal lawsuit. *Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction…"). Finally, the exhaustion requirement applies to all inmate suits about prison life, and exhaustion is required even where the administrative process cannot grant the relief sought. *Porter*, 534 U.S. at 532.

In summary, compliance with prison grievance procedures is required in order for a prisoner to properly exhaust his or her administrative remedies. *See Bock*, 549 U.S. at 218. Only after proper exhaustion may a prisoner's lawsuit regarding inmate life be brought before a federal court. *Id.*

### B. Plaintiff Failed to Exhaust Available Administrative Remedies

Applying the above-described principles to the case at bar, it is clear that Plaintiff failed to exhaust available administrative remedies. At MCF-STW, these remedies consisted of the procedure set forth in DOC Policy 303.100. First, with respect to inadequate meals, Plaintiff started down the correct path toward exhaustion by submitting kites. Prison staff responded to these kites in writing. However, when Plaintiff attempted to file a formal grievance with respect to inadequate meals, he took a wrong turn by failing to attach kites as required by Policy 303.100. At this point, the grievance coordinator, as required by the Policy, returned the grievance form to Plaintiff. She provided him with instructions as to how to correctly proceed toward exhaustion – simply attach required kites and resubmit the formal grievance. At this point, it appears that Plaintiff had at least three pathways toward continuing the formal grievance procedure: 1) Plaintiff could have resubmitted the grievance form with required kites; 2)

Plaintiff could have filed a formal grievance with the DOC's Central Office; or 3) Plaintiff could have filed an appeal of Thron's decision. Plaintiff did none of these things. Thus, Plaintiff has failed to follow the DOC grievance procedure and consequently failed to exhaust available administrative remedies.

Second, with respect to Plaintiff's allegations of mail tampering, Plaintiff never submitted or attempted to submit a formal grievance on this topic. Therefore, Plaintiff failed to follow the DOC grievance procedure and consequently failed to exhaust available administrative remedies with respect to his claims of mail tampering.

### C. The Exception to the Exhaustion Requirement is Unavailable to Plaintiff

Failure to exhaust administrative remedies may be excused only when prison officials prevent exhaustion by, for example, failing to respond to requests for informal resolution or requests for grievance forms. *Lyon v. Vande Krol*, 305 F.3d 806, 808-09 (8th Cir. 2002). Although Plaintiff argues that he was prevented from exhausting, the record does not support the contention that the DOC grievance procedure was unavailable to Plaintiff. In contrast, the record shows that DOC staff responded to Plaintiff's kites, letters, and his attempt at submitting a formal grievance. Plaintiff was also given clear instructions as to how he could satisfy the requirements of the grievance procedure by attaching kites. The record contains at least one kite and one letter that Plaintiff could have attached to his "Offender Grievance" form regarding inadequate meals. (Compl. Ex. A, Doc. No. 1-2; Doc. No. 50 at 4.) It may be the case, as Plaintiff argues, that prison staff did not respond to some of Plaintiff's kites or other informal communications. However, the fact that prison staff did not respond to some of Plaintiff's attempts at informal resolution does not negate the fact that prison staff did respond to at least

10

two of Plaintiff's attempts at informal resolution. Plaintiff, of his own accord, chose not to resubmit his formal grievance with these attached communications. There is no evidence in the record that he was prevented from doing so. Further, there is no evidence in the record that prison staff prevented Plaintiff from filing a formal grievance with respect to mail tampering.

Thus, because the record shows that the DOC's grievance procedure was available to Plaintiff, Plaintiff cannot escape the exhaustion requirement. Consequently, this action must be dismissed. [3]

## IV. CONCLUSION

Viewed in the light most favorable to Plaintiff, and giving Plaintiff the benefit of all reasonable inferences, Plaintiff has failed to set forth specific facts demonstrating a genuine issue with respect to exhaustion of available administrative remedies prior to filing this lawsuit. As a result, the Court concludes that Plaintiff has failed to exhaust available administrative remedies as required by the PLRA, and recommends that this action be dismissed in its entirety.

## V. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Bill Deike's Motion to Dismiss or Alternatively, For Summary Judgment [#30] be **GRANTED,** and that the Motion for Summary Judgment by Defendants Joan Fabian, Kao Her, Ronald Julin, John King, Michael Parks, Mary Perez, and Thomas Walsch [#40] be **GRANTED**. It is **FURTHER RECOMMENDED** that the case be dismissed as to Defendant Vaughn Herbert.

---

3 Although Defendant Deike's motion to dismiss or for summary judgment is based upon arguments relating to Deike's contested state actor status, the Court need not reach this issue because Plaintiff's failure to exhaust warrants dismissal. *See* 42 U.S.C. § 1997e.

## VI. ORDER

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Amend Complaint [#46] be **DENIED as moot**.

The Court recommends that **JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: July 21, 2010                            *s/ Franklin L. Noel*
                                                FRANKLIN L. NOEL
                                                United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before August 4, 2010, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.